TAREK NESSOULI,

    Plaintiff,

vs.

RESURGENS, P.C.,

    Defendant.

Action No. 1:13-CV-02772-SCJ

## FIRST AMENDED COMPLAINT

On August 20, 2013, Plaintiff Dr. Tarek Nessouli, M.D. commenced this lawsuit by filing a Complaint against Defendant Resurgens, P.C. ("Resurgens"). Dkt. 1. After obtaining an extension from Plaintiff's Counsel to file a responsive pleading to the Complaint, on September 24, 2013, Resurgens, P.C. filed an Answer to Plaintiff's Complaint. Dkt. 7.

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff hereby files his First Amended Complaint against Defendant Resurgens, P.C. and shows the following:

## JURISDICTION AND VENUE

1.

This is a civil action for violation of the Age Discrimination and Employment Act, 29 U.S.C. § 621 *et. seq*. ("ADEA") over which original, federal question jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331, and the ADEA.

2.

Venue is appropriate in this Court under 28 U.S.C. § 1391 as this action is brought in a judicial district in which the Defendant resides or may be found at the time the action is commenced and in which the discriminatory acts described below occurred. Further, Plaintiff resides and performs services for Defendant within the Northern District of Georgia.

**PARTIES**

3.

Plaintiff Tarek Nessouli, M.D. ("Dr. Nessouli") is individual who was born on February 12, 1949.

4.

Defendant Resurgens, P.C. ("Resurgens") is a professional corporation registered in Georgia with is principal offices at 5671 Peachtree-Dunwoody Road, Suite 700, Atlanta, Georgia 30342.

5.

Resurgens is an employer as defined in the ADEA in that it is both engaged in an industry affecting commerce and has twenty or more employees for each working day in each of twenty or more calendar weeks in both the current and preceding calendar year.

6.

Resurgens can be served with process by serving its CEO and its registered agent for service, Steven B. Wertheim, Resurgens, P.C., 2550 Windy Hill Road, Suite 317, Marietta, Georgia 30067.

**ALLEGATIONS**

7.

Resurgens is Georgia's largest orthopaedic practice, employing over 90 orthopaedic surgeons who work at one of its 21 Atlanta-area office/clinics. Resurgens admits in written agreements with them and otherwise that these physicians are all employees of Resurgens.

8.

Resurgens CEO is Steven Wertheim, and Resurgens' President is Kay Kirkpatrick (hereinafter "Executive Team").

9.

Since 1978, under the ADEA, it has been unlawful *per se* for an employer like Resurgens to require any of its employees to retire or resign because of the employee's age unless the employer can establish that age is a bona fide occupational qualification ("BFOQ") for the position at issue.

3

10.

In 2003, Resurgens' Executive Team drafted a written retirement policy ("Retirement Plan") that stated that its physician employees would be required to retire solely because of their age when they turn age 65. Because Resurgens' has no retirement plan for its physician employees, this "Retirement Plan" was actually a written policy that stated that Resurgens would terminate the employment of any Resurgens physician solely because of their age when they turned age 65 (hereinafter "Age 65 Termination Policy").

11.

Resurgens is a member of a medical Human Resources group that informs its members in a written manual that an age-based retirement policy is illegal under the ADEA. The Executive Team decided not to communicate or implement its drafted Age 65 Termination Policy in 2003.

12.

In 2009 and 2011, the Executive Team again considered implementing the Age 65 Termination Policy. It again decided not to do so.

13.

However, in 2012, Resurgens' Executive Team decided to communicate and implement its written Age 65 Termination Policy and thus Kirkpatrick informed each of the Resurgens physician employees in writing with a copy of the two-page

Retirement Plan attached.  Thus, all Resurgens physician employees are now subject to termination at age 65 solely because of their age.

14.

Resurgens stated in its written Age 65 Termination Policy that, when a Resurgens' physician's employment is terminated by Resurgens solely because of his age, Resurgens will consider the required termination (which it inaccurately calls a retirement) to be a voluntary resignation by the physician.

15.

 In addition to terminating physician employees at age 65, the Policy states that all physicians age 60 and older are now deemed to be "physicians in transition" to termination.  Resurgens states that it can reduce the work (and thus the compensation) of physician employees age 60 to 64 solely because of their age.  And Resurgens has done so to assign that work to younger physicians.

16.

Resurgens states in the Policy that this is its "management tool" for its age 60 and older physicians.  The "management tool" is to pressure out all of its physicians at age 60 with a threat of and then implementation of a compensation reduction.

17.

Upon information and belief, Resurgens is the only medical practice employer in the United States that now requires its physician employees to terminate their employment solely because of their age. Like Resurgens, other medical practice employers are aware that such a policy is *per se* unlawful under the ADEA. Age is not a BFOQ for the medical profession. Indeed, to the contrary, some of the finest physicians in the Atlanta area and in the United States are age 65 or older.

18.

Resurgens' Age 65 Termination Policy is legally no different than a policy that would require the termination of all Resurgens' African-American or Jewish physician employees solely because of their race or religion.

19.

Resurgens' Age 65 Termination Policy is not only *per se* unlawful, but harmful to the growing Atlanta patient community and the patients these doctors have treated and are treating. Indeed, longer medical experience makes these older doctors among the best doctors in the Atlanta area. Resurgens' illegal policy is not only harmful to older physicians but it is also harmful to their patients.

20.

In 2006, Plaintiff Dr. Tarek Nessouli M.D. began his employment with Resurgens as an orthopaedic surgeon at its Covington, Georgia clinic. Beginning in 2008, he was employed under a written agreement ("Employment Agreement").

21.

Dr. Nessouli turns age 65 on February 12, 2014.

22.

Resurgens Age 65 Termination Policy includes a process whereby a physician age 60 or older can request an extension of the application of the Policy to him or her for one year, i.e., allowing the physician to remain employed for one year after he or she turns age 65. If such an extension request is denied, the physician is terminated at that the time the extension request is denied with the physician's last working date to then occur no later than the physician's 65th birthday. If such an extension is granted, the physician may request one-year extensions each year that can be denied or granted at the sole discretions of Resurgens' Executive Team.

23.

In 2012, Nessouli's immediate supervisor at Resurgens was Dr. Robert Greenfield ("Greenfield").

24.

In August 2012, Nessouli addressed with Greenfield his desire for an extension to the Age 65 Termination Policy that would allow him to be employed at Resurgens after February 12, 2014.

25.

On August 15, 2012, Greenfield wrote an email to Nessouli stating in part, "The language of the retirement policy is still in 'legal construction.'"  Greenfield wrote Nessouli, "We would not be able to make a decision on extension until a year before the retirement age is reached."  Thus, Greenfield informed Nessouli that it would not decide whether to impose an age-based termination of his employment under the Age 65 Termination Policy until on or about February 12, 2013 (one year before Nessouli turns age 65).

26.

In October 2012, Resurgens named Nessouli as one of its 12 "Top Docs" based on his patient service, performance and peer reviews.  This was a high honor and the top rating was announced in Resurgens' internal newsletter that included a photograph of Nessouli.

27.

In November 2012, Nessouli received an "Individual Evaluation Report" from Resurgens ("Evaluation").  In that Evaluation, Nessouli was rated in ten

categories with a rating of from 1 to 5 (5 being the highest rating). His average rating was about a 4 and he received ratings as high as 4.8. Until he informed Resurgens in 2013 that he was to file this lawsuit, Resurgens acknowledged in writing that Nessouli was one of its best physicians.

28.

In February 2013, Resurgens told Nessouli that his request for an extension under the Termination Policy was denied. He was told that Resurgens did not want to grant any extensions under the Policy.

29.

In February 2013, Resurgens made it clear to him that its decision to terminate him because of his age was irrevocable. Thus, in February 2013, Resurgens terminated Nessouli's employment solely because of his age and informed him that his last day at Resurgens after that termination must be no later than February 12, 2014.

30.

In addition, under the Age 65 Termination Policy, in 2013, Resurgens began assigning Nessouli fewer patients solely because of his age - just as Resurgens indicated it could do because of the age of its "physicians in transition." Resurgens has also assigned surgeries to younger physicians, rather than to Nessouli, solely because of his age under the Policy. Accordingly, because his income is directly

impacted by the number of patients and surgeries Resurgens assigns to him, in 2013, Resurgens has caused Nessouli substantial economic damages solely because of his age by applying the terms of the Age 65 Termination Policy.

31.

Resurgens has terminated other physician employees in 2013 under the Age 65 Termination Policy solely because they turned age 65 in 2013. These other terminated physicians have been forced to join smaller practices where they will earn substantially less income. Resurgens will continue to repeatedly reduce the patients of physicians age 60-64 because of their age and terminate physicians who turn age 65 under its Age 65 Termination Policy.

32.

The Executive Team at Resurgens tightly controls Resurgens' physician employees. Its level of control over its physician employees is unusual tight in medical practices. Physician employees of Resurgens like Dr. Nessouli are wholly controlled by the Executive Team and its appointed designees.

33.

The Executive Team requires that its physicians enter into a detailed employment agreement that gives Resurgens extraordinary control over their jobs. In 2008, Dr. Nessouli was required to sign this standard Resurgens physician employment Agreement.

34.

The Employment Agreement is a one-year employment agreement stating that the relationship is an employment relationship that can be renewed annually in the sole discretion of Resurgens. But under the terms of the Employment Agreement, Resurgens can terminate the physician's employment - even during the first year - at any time for any reason.

35.

Under the required Employment Agreement, "employee" physicians like Nessouli have their offices, patients, fees, supervisor, staff, equipment, compensation formula (which is not a shared profit formula), on-call hospital(s) and all of the other terms and conditions of their employment determined and dictated by Resurgens (i.e., the Executive Team).

36.

Dr. Nessouli had no control or role in the management of Resurgens. He had no control or vote in selecting members of the Executive Team or the Executive Team's self-selected rubber-stamping "Board." He could not vote on anything material at Resurgens or vote to select those who did vote on anything.

37.

For example, the Executive Team implemented its written Age 65 Termination Policy without any notice to, input from, role in, influence from or

approval by Nessouli.  It was sent to him by email from Kirkpatrick - a new rule

from on high that said he was too old to practice medicine anymore at Resurgens.

Similarly, he was simply told in February 2013 from on high that he was

terminated at that time because of his age under the Policy.

38.

Resurgens' Age 65 Termination Policy has adversely affected and adversely

affects Nessouli and every Resurgens' physician age 60 or older and is a blatant,

willful and *per se* violation of the ADEA.

39.

As a result of Resurgens' violations of the ADEA, including the February

2013 unlawful termination of Dr. Nessouli's employment because of his age and

the reduction in his income because of his age, Dr. Nessouli has suffered

substantial economic and other damages and will continue to do so.

40.

As a result of Resurgens termination of Nessouli in February 2013, he

searched for alternative employment.  Kirkpatrick issued him a reference letter

stating that he was "employed" by Resurgens.

41.

Nessouli also retained counsel.  On April 19, 2013, his counsel sent a letter

on his behalf to Kirkpatrick and Wertheim asserting, among other things, that

12

Resurgens' February 2013 termination of Nessouli and the Age 65 Termination Policy violated the ADEA.

42.

After reviewing that letter and its Policy, Resurgens decided not to take any action to comply with the ADEA and decided to continue and vigorously enforce its Age 65 Termination Policy.

43.

Accordingly, Nessouli through counsel informed Resurgens that he was intending to file this lawsuit. On June 14, 2012, Nessouli filed an EEOC Charge against Resurgens asserting that Resurgens had violated the ADEA. Under the ADEA, Nessouli would be permitted to file this lawsuit on August 13, 2013. Nessouli informed Resurgens through his counsel that he intended to file his lawsuit on or about August 13, 2014.

44.

Resurgens' Counsel then wrote Nessouli's Counsel and asserted that, because he was an employee of Resurgens under his Employment Agreement, Nessouli was required to mediate his ADEA claim before he could file suit. While Nessouli asserted through counsel that he was not required to mediate his claim before filing suit, because of a threat that Resurgens would move to dismiss this lawsuit for a failure to mediate, he agreed to mediate.

45.

On July 3, 2013, the parties agreed to mediate Nessouli's ADEA claim on August 16, 2013.

46.

Just after Wertheim learned that Nessouli would (in his understanding having been forced to) mediate his ADEA claim, Wertheim drafted a "Final Warning Letter" to Nessouli.

47.

On the evening of July 17, 2013, Wertheim sent an email to Nessouli. He attached the "Final Warning Letter" ("FWL") to the email. In the email, Wertheim wrote, that (again shortly after the mediation had been set) there had been an "emergency" meeting at Resurgens about Nessouli. He stated that he was attaching a letter that "we were going to discuss in detail" with him but Wertheim had decided not to do so. In addition to sending the FWL without warning to him by email, Wertheim wrote, "I am going to leave a copy in your home mail box late tonight or in the a.m." In an effort to explain this bizarre communication and his decision to come to Nessouli's home to deliver the letter, Wertheim stated only, "we need to deal with this now."

48.

Wertheim wanted to "deal with this now" because he knew the mediation was to occur shortly. His plan was to issue the retaliatory FWL and use it at the mediation to threaten Nessouli that, if he did not agree at the mediation not to file his lawsuit (which would ultimately lead to the end of Wertheim's valued but unlawful Age 65 Termination Policy), Wertheim would use the pretextual FWL not only to make Nessouli's post-termination last day before his mandatory last day in February 2014, but that the end of his employment would be reported by Resurgens as having been caused by (bogus) performance problems rather than his age. In this manner, Wertheim sought to send a message to Nessouli that, if he did not agree not to file his suit at mediation, he could use the FWL to exit Nessouli even sooner and to make it more difficult for Nessouli to find another job as a physician.

49.

The FWL was facially pretextual. Before his EEOC Charge and threatened lawsuit, Resurgens rated Nessouli with a high rating on his Evaluation and named him one of its 12 Top Docs in its newsletter. The primary focus of the FWL was (1) that Nessouli had received patient complaints because he had not prescribed pain medication to the patients who he determined did not need it and under circumstances where there was reason to believe the patient may have been

addicted to pain medication; and (2) Nessouli's treatment of one patient in a manner that was standard and proper treatment at Resurgens. The highly rated Top Doc was no more because he had filed an EEOC Charge challenging the Age 65 Termination Policy and was threatening to end the Age 65 Termination Policy with an impending lawsuit. Nessouli through counsel wrote Resurgens' Counsel asserting that the FWL was unlawfully retaliatory. Resurgens did not respond to that letter. It knew the FWL was retaliatory.

50.

At the mediation, Nessouli did not agree not to file this suit and the mediation was unsuccessful.

51.

Accordingly, on August 20, 2013, Nessouli commenced this lawsuit.

52.

When he learned of the filing of the lawsuit, Wertheim sent an angry email about Nessouli to all the Resurgens physicians. He sent out an email to all of the Resurgens physicians stating, "As some of you may have seen, an age discrimination lawsuit has filed against Resurgens." Thus, he admittedly realized that some or all of the physicians knew of the suit and that Nessouli had filed it. Wertheim wrote that, "[W]e will vigorously defend those claims." Thus, Wertheim sent two messages to all the Resurgens physicians: (1) Nessouli is now our enemy;

(2) we have again reviewed and are "vigorously" maintaining our Age 65

Termination Policy; and (3) don't any of you dare join his effort to legally stop us.

53.

Both as a result of the application of the Age 65 Termination Policy and in

retaliation for his EEOC Charge and this lawsuit, Resurgens has intentionally sent

Nessouli less patients and less surgeries (and sent them to younger physicians) in

order to further reduce his income, thus causing him more damages due to the

illegal Policy and the illegal retaliatory actions.

54.

On September 9, 2013, Wertheim sent an email to Nessouli with a letter that

stated in total:

> As you know, earlier this year, the Resurgens Board of Directors (the
> "Board") voted to deny your request that Resurgens grant you an
> exception under its Retirement Policy in order to allow you to
> continue practicing medicine at Resurgens after you reach age 65.
> The Board has decided to suspend application of the Retirement
> Policy to you pending further review of the policy.
>
> Please be advised that the Final Warning letter issued to you on July
> 17, 2013, remains in effect.

55.

Thus, having reviewed Nessoui's claim since April 2013, in this email

Resurgens communicated that it had decided <u>not</u> to end the Policy with respect to

any Resurgens physicians, including Nessouli.  Resurgens had already "reviewed"

17

the Policy and its only decision in that "review" was whether it would comply with the ADEA. It communicated in this letter to Nessouli that Resurgens would not comply with the ADEA and that it wished to continue to violate the ADEA.

56.

Resurgens not only did not admit that the Policy was unlawful but stated that it will "vigorously" seek to maintain it in this lawsuit.

57.

The September 9 letter was a litigation ploy to seek to impact Nessouli's claim for relief in this lawsuit. While contrary to controlling law, Resurgens hoped to use the letter to claim that Nessouli lacked standing or that his claims were mooted by the September 9 letter. It sought to suspend (but not end) the Policy and only with respect Nessouli (who is the only physician that has thus far sued Resurgens) in order to maintain the Policy it knows is illegal (and then apply it again to Nessouli if it could get this case dismissed). Wertheim ended the letter by reminding Nessouli that the FWL (which Wertheim at least implicitly admitted was bogus based on his feigned decision to reinstate him) was a sword of Damocles over his head and would come down on it if he stayed. Resurgens' plan was not complicated - threaten Nessouli to leave before February 2014, seek to dismiss this lawsuit on mootness grounds, and maintain the illegal policy to force out Nessouli other older doctors because of their age.

58.

In fact and in law, Resurgens had already terminated Nessouli.  The letter was  bad faith offer of reinstatement that was packaged in language and context to send the message - you better not accept this offer of reinstatement as we will make your last day even sooner than February 2014 if you do.  The letter could not have been more transparent.  Through his counsel, Nessouli sent a letter to Resurgens through its counsel explaining the obvious as to why the letter was a sham.  Resurgens refused to factually respond to that letter as it recognized the September 9 letter was a sham to seek to impair this Court from applying the law.

59.

On September 24, 2013, Resurgens filed an Answer to Nessouli's Complaint.  In that Answer, Resurgens asserted that its Age 65 Termination Policy was lawful because age was a BFOQ for a physician position at Resurgens.  In other words, Resurgens asserted that a physician is not capable of doing his job once he or she is age 65 solely because of his or her age.  This assertion reaffirmed what was already obvious – that Resurgens believes and intends to maintain the illegal position that physicians who are 65 or older are incapable of practicing medicine solely because of their age, and they will be penalized starting at age 60 until they leave Resurgens.  Beginning at age 60, physicians are no longer welcome to work at Resurgens.

60.

In addition, in response to an undisputed assertion in the Complaint that Nessouli was named as a Top Doc for Resurgens in October 2012 (a fact that Resurgens had to admit), Resurgens inserted a non-responsive *ad hominem* attack on Nessouli that was designed to retaliate against him for this lawsuit and make it more difficult for him to find a job.  Resurgens realized that its attacks were defamatory but included them in a non-responsive paragraph in its Answer because it could not be sued for defamation because of the law of privilege in court pleadings.  Wertheim is on a "take no prisoners" path to seek to destroy Nessouli because of this lawsuit.

61.

Despite Resurgens' efforts to prevent him from finding other work after it terminated him and he sued, Nessouli has found another position.  Thus, in October 2013, Nessouli informed Wertheim that, in response to Resurgens' termination, he had sought and found another position and would start in early 2014.  He asked Wertheim to inform him of what date Resurgens wished for him to be his last day but asked him to consider the interests of his patients.  Wertheim has to date ignored this email.   He just wants Nessouli gone now.

62.

Resurgens Age 65 Termination Policy is not an isolated or unintentional violation of the ADEA but a continuing and deliberate unlawful practice.

63.

Resurgens continues each day to deprive Nessouli from income both under the unlawful Policy and its pattern of unlawful retaliation.

## ADMINISTRATIVE PREREQUISITES

64.

On June 14, 2013 Nessouli filed a Charge Of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge") alleging age discrimination in violation of the ADEA by Resurgens.

65.

This lawsuit was filed more than 60 days after Nessouli filed his ADEA Charge against Resurgens with the EEOC.

66.

All administrative prerequisites for filing an ADEA Lawsuit have been fully satisfied by Nessouli.

# COUNT ONE

## (Unlawful Age Discrimination In Violation Of ADEA)

### 67.

Plaintiff repeats and incorporates by reference all of the allegations set forth in Paragraphs 1-66 above as if set forth fully herein.

### 68.

Under the ADEA, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's age."

### 69.

As Resurgens expressly admits in his Employment Agreement and otherwise, Plaintiff is an employee of Resurgens under the ADEA.

### 70.

Resurgens' February 2013 communication to Dr. Nessouli terminating his employment because of his age pursuant to Resurgens' Age 65 Termination Policy violated the ADEA.

### 71.

Resurgens' decision to assign Plaintiff fewer patients and fewer surgeries during the period that Resurgens designated as "transition" to termination was also

because of his age and because he was by definition a "physician in transition" over age 60 under the Age 65 Termination Policy.

72.

Resurgens' Age 65 Termination Policy is a *per se* violation of the ADEA.

73.

In addition to his termination, Resurgens had reduced Nessouli's income in 2013 because of the unlawful Policy by assigning him less patients and surgeries due to his age pursuant to the express terms of the Policy.

74.

Resurgens' violations of the ADEA set forth herein are willful violations of the ADEA requiring that Resurgens pay Plaintiff liquidated damages.

75.

Under the ADEA, Plaintiffs is entitled to a declaratory judgment that Resurgens' Age 65 Termination Policy violates the ADEA, and injunctions requiring Resurgens to end its Age 65 Termination Plan, and in addition to make-whole damages, back pay, front pay, liquidated damages, interest, fees and costs.

## COUNT TWO

### (Unlawful Retaliation In Violation Of ADEA)

76.

Plaintiff repeats and incorporates by reference all of the allegations set forth in Paragraphs 1-75 above as if set forth fully herein.

77.

Under the ADEA, it is unlawful for an employer to retaliate against an employee or former employee because that individual has engaged in protected conduct under the ADEA.

78.

On April 19, 2013 and subsequently, Nessouli engaged in opposition protected conduct under the ADEA by opposing violations of the ADEA by Resurgens.

79.

In filing his EEOC Charge and in filing this lawsuit, Nessouli engaged in participation protected conduct under the ADEA.

80.

As set forth above, since his protected conduct, Resurgens has imposed material adverse actions against Nessouli, including his February 2013 termination, the decisions to send him less patients and surgeries, the Final Warning Letter, the September, 2013 letter, and its *ad hominem* and non responsive attacks in a public pleading.

81.

But for Nessouli's protected conduct, Resurgens would not have imposed those material adverse actions against him.

82.

Resurgens has violated the anti-retaliation provision of the ADEA by imposing retaliatory material adverse actions against Nessouli.

83.

Due to Resurgens unlawful retaliation in violation of the ADEA, Nessouli has suffered economic and other damages and continues to do so.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectively prays:

A. That a declaratory judgment be issued declaring that the Resurgens' Age 65 Termination Policy is invalid and violates the ADEA.

B. That a preliminary and permanent injunction be entered requiring Resurgens to end and revoke its Age 65 Termination Policy and preventing it from ever establishing such a Plan in the future;

C. That a declaratory judgment be issued declaring that Resurgens unlawfully retaliated against Nessouli in violation of the ADEA;

D. That judgment be entered in favor of Plaintiff under the ADEA;

E. That Plaintiff be awarded back pay, front pay, interests and costs;

F.   That judgment be entered in favor of Plaintiff in an amount, equal to the amount in (D) above, as liquidated damages, pursuant to 29 U.S.C. § 626(b);

G.   That Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable;

H.   That Plaintiff be granted his attorneys' fees, experts' fees, and the costs and expenses of this litigation; and

I.   That the Court retain jurisdiction over defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law.

**<u>PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS ACTION</u>**

Respectfully submitted,


s/Thomas J. Munger
Georgia Bar No. 529609

MUNGER & STONE, LLP
999 Peachtree Street, N.E.
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0829
Facsimile:  (404) 815-4687


s/Benjamin A. Stone
Georgia Bar No. 683850


MUNGER & STONE, LLP
999 Peachtree Street, N.E.
Suite 2850
Atlanta, Georgia 30309

Telephone: (404) 815-0933
Facsimile:  (404) 815-4687

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAREK NESSOULI,

     Plaintiff,

vs.

      Action No. 1:13-cv-2772-SCJ

RESURGENS, P.C.,

     Defendant.

## **CERTIFICATE OF SERVICE**

This is to certify that I have this 18th day of October, 2013 served FIRST

AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system

which will automatically send e-mail notification of such filing to: Michael

Wayne Johnston., and Scott B. Mario

                         s/Thomas J. Munger
                         Georgia Bar No. 529609